UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **JAMES STUART FALLER, II** | **PLAINTIFF** |
| v. | No. 3:23-cv-526-BJB |
| **UNITED STATES DEPARTMENT OF JUSTICE, ET AL.** | **DEFENDANTS** |

### MEMORANDUM OPINION & ORDER

James Faller filed this *pro se* complaint alleging seven different legal theories that he contends entitle him to damages. Each one, according to the Complaint, is "actionable under 42 U.S.C. § 1983, *Bivens*,[1] and the Federal Tort Claims Act." Complaint (DN 1) at 17–20 (cleaned up). As Defendants he names the United States Department of Justice, unknown FBI agents, unknown IRS agents, and the Commonwealth of Kentucky "through" Governor Andy Beshear. *Id.* at 1.

This is not Faller's first foray in federal court; various courts have repeatedly confronted and dismissed similar civil allegations against overlapping defendants. *See* DOJ Motion to Dismiss (DN 16) at 2 (collecting prior lawsuits). And the federal government twice prosecuted and convicted Faller for tax- and fraud-related offenses. *See generally United States v. Faller*, 675 F. App'x 557 (6th Cir. 2017); *United States v. Murray, et al.*, 154 F. App'x 740 (11th Cir. 2005). This Court recently rejected Faller's *coram nobis* petition directed at his convictions in the Western District of Kentucky. *See* DN 455, *United States v. Faller*, No. 1:13-cr-29, 2024 WL 2933468 (W.D. Ky. June 10, 2024). And federal and Kentucky prosecutors apparently indicted Faller based on additional allegations before ultimately dismissing each set of charges. *See* Complaint at 4, 11; DOJ MTD at 3.

This lawsuit contends that these indictments and related investigations unlawfully violated his civil rights. According to Faller, the Defendants conspired to indict him—once in federal court and twice in Kentucky state court—to silence his whistleblower campaign against corruption. Complaint at 10. The Defendants also allegedly conspired to (among other things) cause the sexual assault of his child, raids on his homes and offices, the death of his wife, and his own attempted assassination on more than a dozen occasions. Complaint at 2; Response to DOJ MTD (DN 18) at

---

[1] *Bivens v. Six Unknown Named Narcotics Agents*, 403 U.S. 388 (1971).

1

2–3.[2]  As relief, Faller requests billions of dollars in actual and punitive damages related to his medical needs, the loss of his airplanes, wrongful death, emotional distress, and the loss of valuable corporate and residential properties. Complaint at 20–22. He also seeks mandamus ordering the Defendants to remove from the internet articles placing Faller in a bad light. *Id.* at 22.

The Defendants—in separate federal (DN 16) and state (DN 11) groupings—moved to dismiss Faller's complaint on several grounds discussed below. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must accept factual allegations as true but needn't accept "legal conclusions" and conclusory statements that lack factual underpinnings. *Id.*

**A. The federal Government.** The United States Department of Justice, acting on behalf of itself as well as the unknown FBI and IRS agents, moved to dismiss Faller's claims (as untimely, beyond the Court's jurisdiction, and insufficiently pled) against these federal defendants. DOJ MTD at 1, 24.

***Section 1983 claims.*** To recover under § 1983, a plaintiff "must show" among other things "that the alleged deprivation [of federal rights] was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Because federal officials typically act under color of *federal* law, they are rarely subject to liability under § 1983." *Strickland on Behalf of Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997). Federal agents may in some limited circumstances bear liability under § 1983 if they act "under color of state law." *Id.* A "federal agency," by contrast, "is not a 'person' under § 1983, and therefore may not be sued under this act." *Clark v. City of Anchorage*, No. 04-cv-677, 2006 WL 181874, at *3 (W.D. Ky. Jan. 17, 2006) (citing *Hindes v. FDIC*, 137 F.3d 148, 158 (3d Cir. 1998)).

That limitation serves to eliminate Faller's § 1983 claims against the Justice Department. And his § 1983 claims against the (unknown) federal agents also fail because nothing in the Complaint indicates that any of them (or the DOJ, for that matter) were acting under color of state law. Faller merely alleges, in conclusory fashion, that the various assaults and insults he suffered were wrapped up in the same conspiracy between state and federal officials. *See* Complaint at 12–13.

---

[2] Faller states in his complaint that he believes the Court will treat his claims unfairly because he is a *pro se* plaintiff presenting allegations of a broad conspiracy. Complaint at 2. The Court, however, applies "liberal pleading standards … to *pro se* litigants" such as Faller—giving them the benefit of every reasonable doubt. *Carter v. Logsdon*, 4:23-cv-30, 2024 WL 1323653, at *3 (W.D. Ky. Mar. 27, 2024) (applying *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and denying the motion to dismiss a *pro se* complaint).

This is insufficient. Faller never pleads with any specificity how any federal agent or agency may have exercised or influenced state action. "[P]leading requirements governing civil conspiracies," moreover, "are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "Although circumstantial evidence may prove a conspiracy, '[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). The allegations here include no plausible facts that would support the existence of such a conspiracy. Because the Court need not accept unsupported "legal conclusions" or conclusory statements, Faller's § 1983 claims against the federal Defendants fail. *Iqbal*, 556 U.S. at 678.

***FTCA claims.*** Faller also argues that he may sue the Department and its agents under the Federal Tort Claims Act based on their alleged violations of his constitutional rights and failure to properly supervise, control, and train federal employees. Complaint at 7, 17–19. Because the Justice Department maintains these allegations fall outside the FTCA's limited exceptions to sovereign immunity, however, it seeks dismissal for lack of jurisdiction. DOJ MTD at 12.

As the Department sees things, Faller has alleged only constitutional torts, while the FTCA's limited immunity waiver covers only *non*-constitutional torts. "By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). So Faller cannot succeed on a claim under the FTCA that alleges federal constitutional violations by federal defendants.

And to the extent the supervisory and training claims might rest on state rather than federal law, as Faller sometimes suggests, *see* Complaint at 17–20; *see also* DOJ MTD at 13, their prosecutorial and investigatory nature supports the Department's position that these allegations would fall within the FTCA's discretionary-function exception. 28 U.S.C. § 2680(a) (sovereign immunity applies to "[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.").[3]

---

[3] Faller's only express reference to state law appears on page 10 of the Complaint: "Faller also invoked the supplemental jurisdiction of this Court as it pertains to violations of state laws pursuant to 28 U.S.C. § 1367." But the papers nowhere else identify any state laws the Defendants allegedly violated or state torts they allegedly committed. His opposition brief, in fact, insists that his claims all rest on violations of federal constitutional law—not state law. Response to DOJ MTD at 11–18 ("**These acts (Without calling out the constitutional amendment) involve** [. . . .]") (emphasis in original).

3

"[H]iring, supervision, training, and retention require policy judgments—the type that Congress intended to shield from tort liability." *Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014) (FBI's hiring, retention, and supervision of agents alleged to have falsely arrested plaintiff came within discretionary-functions exception); *see also Stout v. United States*, 721 F. App'x 462, 467 (6th Cir. 2018) (VA's hiring, retention, and supervision of nurse who allegedly sexually assaulted plaintiff came within discretionary-function exception). So the FTCA claims against the federal Defendants are likewise subject to dismissal—regardless of whether they rest on federal or state law.

**Bivens *claims*.** Faller claims the federal government and agents owe him damages for violating his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Complaint at 17–20 (citing *Bivens v. Six Unknown Named Narcotics Agents*, 403 U.S. 388 (1971)). The *Bivens* doctrine, at least as originally conceived, "recognized a damages remedy for alleged violations of the Fourth Amendment by federal officers." *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 867 (6th Cir. 2022). And only against officers: Similar to the § 1983 cause of action discussed above, the remedy doesn't apply to agencies. The Justice Department, therefore, "is not subject to liability under *Bivens*" as a matter of law. *Thomas v. Glaxo Wellcome, Inc.*, 93 F. App'x 807, 808 (6th Cir. 2004) (citing *Meyer*, 510 U.S. at 486).

And the Supreme Court has carefully circumscribed that judgemade cause of action even with respect to federal officers. The *Bivens* Court initially inferred in the Fourth Amendment a cause of action to sue agents who allegedly entered Webster Bivens' home without a warrant or probable cause and used unreasonable force while searching the residence. *Bivens*, 403 U.S. at 39197. Since the Court handed down that decision in 1971, however, it has only recognized two other constitutional provisions that may give rise to a private right of action for damages against federal agents: (1) the Fifth Amendment's Due Process Clause as applied to gender discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and (2) the Eighth Amendment as applied to inadequate prisoner medical care, *Carlson v. Green*, 446 U.S. 14, 17–18 (1980).

Plaintiffs have repeatedly tried and failed to persuade the Court to extend the doctrine to additional provisions, *see, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to extend *Bivens* to First Amendment violations), or even to different contexts under amendments that previously embraced *Bivens*-style remedies, *see, e.g.*, *Minneci v. Pollard*, 565 U.S. 118, 131 (2012) (declining to extend—from public to private prison employees—the *Bivens* cause of action recognized in *Carlson* regarding Eighth Amendment violations). Given separation-of-powers concerns, the Court's more recent articulations of the doctrine have cast considerable doubt (to put it mildly) on whether courts may and should recognize such a cause of action in other

contexts. The earlier *Bivens* decisions "rest on an outdated conception of [the] judicial role," according to the Sixth Circuit, and "were handed down at a time when the Court routinely assumed that it was the judge's job to infer a cause of action whenever a substantive provision may have been violated, even if the text didn't offer one." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021) (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020)). "Expanding the *Bivens* remedy is now a disfavored judicial activity," so courts only apply the doctrine to facts closely fitting the handful of precedential *Bivens* decisions. *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (cleaned up).

To determine whether a *Bivens* claim is valid today, courts ask two questions: (1) "whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action" and (2) if so, whether "special factors indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 596 U.S. 482, 483 (2022) (cleaned up). The existence of "any" special factor "alone" is enough to "limit the power of the Judiciary to infer a new Bivens cause of action." *Id.* at 493 (cleaned up); *see also id.* at 496 (asking "whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'") (quoting *Ziglar*, 582 U.S. at 136).

As the federal Defendants highlight, Faller does not present any authority that would support his *Bivens* claims in connection with the alleged violations of his First, Fifth, Sixth, Eighth, or Fourteenth Amendment rights. DOJ Reply (DN 21) at 4. The Supreme Court has never held that *Bivens* extends to First, Sixth, or Fourteenth Amendment claims. And many courts have rejected attempts to infer new causes of action on those bases.[4] The Court *has* recognized a right of action in a particular Fifth Amendment context: the gender-based discrimination at issue in *Davis v. Passman*. But Faller's Fifth Amendment theory—which apparently concerns his indictment and its subsequent dismissal—sits in an entirely "new context" from the allegations at issue in *Davis. Ziglar*, 582 U.S. at 136. Because Faller's "case is different in a meaningful way from previous *Bivens* cases," *id.* at 139, his attempt to infer a *Bivens* claim regarding the Fifth Amendment—as with the First, Sixth, and Fourteenth—fails at the outset. Further, the novel and hard-to-follow legal theories

---

[4] *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.") (citation omitted); *Montgomery v. Ferentino*, No. 4:17-cv-326, 2019 WL 7372323, at *7 (N.D. Ohio Dec. 31, 2019), aff'd, No. 20-3114, 2021 WL 3204843 (6th Cir. Feb. 24, 2021) ("The Supreme Court has not recognized an implied cause of action under *Bivens* for alleged violations of the Sixth Amendment."); *Huang v. Univ. of Pikeville*, No. 7:18-cv-11, 2019 WL 2357370, at *3 (E.D. Ky. June 4, 2019) ("[N]either *Bivens* [n]or its progeny authorizes a private Fourteenth-Amendment cause of action.").

he advances, even assuming they might be proven true, are ones that Congress rather than courts should consider before inviting new damages suits against federal officers. Each would potentially involve enormous financial burdens, unpredictable systematic consequences, and conflicting remedial schemes—each of which the Supreme Court has recognized as a "special factor" counseling against extending *Bivens*. *See Egbert*, 596 U.S. at 493; *Bivens*, 403 U.S. at 396.

Faller's Eighth Amendment allegations of inadequate medical treatment similarly fail. Though hard to follow, this claim involves allegations of "cruel and unusual punishment for non-existent crimes" and "virtual hunting and harassment, including threats and actual violence against Faller and his family in an effort to silence and discredit him, ultimately leading to the wrongful death" of three family members. Complaint at 18. Faller's allegations, it's true, accuse prison officials of delaying or ignoring proper medical care—apparently from an incident in which prison officials allegedly tried to murder him by running him over with a tractor in order to suppress his voice and views. *See id.*; Response to DOJ MTD at 5.

Regardless of the seriousness of these accusations, they present a distinct set of circumstances from the Eighth Amendment concerns in *Carlson*. There, the defendants (federal prison officials) allegedly showed race-based deliberate indifference toward the inmate's medical needs. Those officials allegedly ignored "the advice of doctors," "administered contra-indicated drugs," "use[d] a respirator known to be inoperative," and "delayed … transfer to an outside hospital"—ultimately resulting in a prisoner's death. *Carlson*, 446 U.S. at 16 n.1. Faller's theory, by contrast, effectively alleges assault and prior restraint. His actual pleadings don't focus on medical indifference, which make only a tardy appearance in his response brief and therefore cannot help avoid dismissal.

In any event, even if those allegations did exist, they pose a new set of circumstances distinct from race-based medical indifference. Faller doesn't allege he was mistreated because of how he looked or what group he belonged to—but instead because the Government was out to get him. The lack of medical care (even if it is to be considered and believed) was incidental at best to Faller's allegations of a wide-ranging conspiracy to muzzle and ultimately murder him. These accusations of individualized targeting of prisoners pose a "new context" about which the Court must use "caution" before "extending *Bivens* remedies." *Ziglar*, 582 U.S. at 136 (cleaned up). No such remedies will "be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* Faris's allegations certainly present a set of circumstances in which legislators rather than judges are authorized to predict and weigh the "systemwide" consequences of blessing such a remedy for the violations Faller alleges. *Id.* And "that uncertainty alone is a special factor that forecloses relief." *Egbert,* 596 U.S. at 493. So no grounds exist to extend *Bivens* from the "three narrow circumstances" previously recognized by the

6

Supreme Court, *Elhady*, 18 F.4th at 882, to the farther-flung areas of targeted misconduct across the criminal-justice system that Faller alleges.

In any event, even if these Eighth Amendment allegations were plausible and gave rise to a *Bivens* cause of action, the claim fails for another reason: the statute of limitations expired long before he filed suit. Although Faller does not provide an exact date of the mistreatment he allegedly experienced while incarcerated, it clearly occurred "during [his] time in prison." Response to DOJ MTD at 5. That ended more than five years ago. (He received a three-year sentence in January 2016. *See* DN 357, *United States v. Faller*, No. 1:13-cr-29.) *Bivens* claims in Kentucky are subject to a one-year statute of limitations. *Dudley v. Streeval*, No. 20-5291, 2021 WL 1054390, at *5 (6th Cir. Feb. 8, 2021) (citing *Zundel v. Holder*, 687 F.3d 271, 280–81 (6th Cir. 2012)). "The statute of limitations begins to run when the plaintiff knows, or has reason to know, that he or she has suffered an injury." *Id.* Faller alleges that the medical maltreatment occurred while he was in prison and offers no reason why he was unaware of the alleged maltreatment at the time. So he had until 2020 to file a complaint. Yet he waited until 2023 to do so. So his Eighth Amendment claim is time-barred.

Similarly, Faller's claim under the Fourth Amendment—the provision at issue in *Bivens* itself—also fails because the statute of limitations has run. This requires dismissal of the claim even assuming existing *Bivens* doctrine extends to the alleged "fraudulently obtained search warrant" and subsequent "raid" of his business that Faller describes in his Fourth Amendment claim. Complaint at 18. Faller says the feds conducted multiple "raids on his homes and offices," Complaint at 17, but provides only a single a date: April 13, 2016. *Id.* at 15.[5] Again, he didn't sue until 2023 given the one-year limitations period that applies in Kentucky. *Dudley*, 2021 WL 1054390, at *5 (citing *Zundel*, 687 F.3d at 280–81). Faller alleges that the 2016 raid violated his rights and offers no reason why he was unaware of that raid at the time. So his Fourth Amendment claim is also time-barred.[6]

---

[5] Faller alleges that the Government "illegally raided" his property "three times and [has] taken evidence and actually abducted a witness by using a fake subpoena." Response to DOJ MTD at 13. No additional facts are offered to support these borderline-fantastical allegations—and they arguably fail under Rule 8's normal pleading requirements—even for *pro se* plaintiffs—as set out in *Iqbal* and *Twombly*. Even if they were sufficiently plausible, however, no facts would support the notion that any additional searches similar to the one that allegedly occurred in 2016 happened within a year of the complaint's filing.

[6] Faller also argues that the "continuing violation" doctrine applies to extend the limitations period. *See* Response to DOJ MTD at 7, 13–14 (citing, *e.g.*, *United Air Lines v. Evans*, 431 U.S. 553 (1977); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). But no authority supports the doctrine's applicability here. The continuing violation doctrine is "triggered by continuing unlawful acts, rather than by a continued injury." *Kerr v. Pollex*,

**B. The Commonwealth of Kentucky & Governor Andy Beshear.** Faller's Complaint listed as a Defendant the Commonwealth of Kentucky "through" its Governor, An[d]y Beshear. Complaint at 1, 8. The Governor, in his official capacity, moved to dismiss the claims. Commonwealth MTD (DN 11) at 1. Faller emphatically insisted in response that the Governor is not a Defendant but is only a vessel for service on the Commonwealth. Response to Commonwealth MTD (DN 12) at 2. What this means is unclear. Stranger still, Faller filed a motion to strike the Governor's filings stating "[i]n review of the Complaint, Faller never named the Governor in any capacity." Motion to Strike (DN 15) at 3. But the Complaint in fact names the Governor two times—though it appears not to pin any supervisory or vicarious or direct liability on him. *See generally Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").[7] So the Court denies the motion to strike (DN 15).

***Section 1983 claims.*** To the extent Beshear is a Defendant at all, he's sued only in relation to the Commonwealth and therefore in his official capacity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). And suits against individuals in their official capacity are treated as suits against the state (a point on which Faller and the Commonwealth appear to agree). *Id.*; Motion to Strike at 3. This means, however, that the Governor and the Commonwealth are both entitled to Eleventh Amendment "[s]overeign immunity [that] protects states, as well as state officials

---

No. 22-3993, 2023 WL 8358798 at *3 (6th Cir. Aug. 11, 2023). And it applies only in limited circumstances—mostly confined to the Title VII context. *See Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257 (6th Cir. 2014) (citation omitted) ("Courts have been 'extremely reluctant' to extend the continuing-violation doctrine beyond the context of Title VII."). So the continuing-violation doctrine cannot save his Fifth or Eighth Amendment constitutional-tort claims.

[7] Although Faller does not allege any misconduct by Governor Beshear, he does allege misconduct by other named and unnamed state officials. *See* Complaint at 8–13 (discussing a former attorney general, law enforcement officers, and two judges); Response to Commonwealth MTD at 7 (accusing unnamed state officials of participating in the alleged conspiracy against him). But these allegations are insufficient to maintain a suit against Governor Beshear (which Faller disclaims in any event) because they do not allege facts that support wrongdoing by the Governor himself. Faller has not named as defendants the various other state officials who appear in the narrative found in his Complaint. *See* Complaint at 8–9, 11–13. Nor has he argued that Beshear is somehow liable for causing any constitutional violations by other state actors. *See generally Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

sued in their official capacity for money damages, from suit in federal court." *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017).[8]

None of the "three exceptions to sovereign immunity" apply here: "(1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), applies." *Id.* at 410 (cleaned up).

Kentucky has not waived its sovereign immunity for § 1983 suits. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Congress did not abrogate the states' sovereign immunity through § 1983. *Boler*, 865 F.3d at 410 (citing *Will*, 491 U.S. at 66). And although "*Ex Parte Young* allows plaintiffs to bring claims for prospective relief," it "does not extend to retroactive relief or claims for money damages." *Id.* at 412 (citing *S&M Brands, Inc. v Cooper*, 527 F.3d 500, 507–08 (6th Cir. 2008)). So the Commonwealth and Governor Beshear are immune from any liability or suit based on these damages claims.[9]

***FTCA claims.*** As noted above, the FTCA is a grant of jurisdiction to federal district courts and a limited waiver of federal sovereign immunity that allows some tort claims to proceed against the federal government. If a claim does not fall within the elements set out in the statute, a court lacks jurisdiction and must dismiss the claim. *Meyer*, 510 U.S. at 477 ("A claim comes within this jurisdictional grant—and thus is 'cognizable' under § 1346(b)—if it is actionable under § 1346(b). And a claim is actionable under § 1346(b) if it alleges the six elements [of an FTCA claim]."). The first element of an FTCA claim requires a claim "against the United States." *Id.* (quoting § 1346(b)). Faller's FTCA claims against the Commonwealth and various unnamed state actors are plainly not claims against the United States. And the

---

[8] Sovereign immunity is a jurisdictional issue. *Boler*, 865 F.3d at 409. So the Court considers it before (and ultimately in lieu of) the flaws in the pleadings that the Commonwealth Defendants' brief points out.

[9] Faller also requests "[a]n order of mandamus and injunction ordering these defendants to remove and erase from all World Wide Web any and all articles of or by the government or anyone on their behalf that tends to place Faller in a bad light." Complaint at 22. Faller cites no authority supporting the notion that courts may grant such relief. Even assuming that authority exists, and that Faller has alleged facts supporting (presumably) First Amendment violations justifying relief, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 402 (1976) (citations omitted). Given the lack of any plausible allegations regarding the internet content that concerns him, the Defendants' roles in publishing or maintaining it, the reasons why such speech by others violates his own First or Fifth or Fourteenth Amendment rights, the Court has no basis to treat this as a cognizable claim that—even if proven—could warrant the extraordinary step of mandamus over government-inflected speech. So the Court dismisses this request for nonmonetary relief as well.

FTCA does not otherwise authorize suits against states or state officials. So the FTCA claim against the Commonwealth and the Governor fails.

**Bivens *claims.*** The *Bivens* claims Faller asserts against state actors are similarly not cognizable. *Bivens* claims, by definition, run against federal agents. *Meyer*, 510 U.S. at 473. The Supreme Court has repeatedly warned against suggestions that *Bivens* remedies be extended into new contexts. *Id.* at 484 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988)). Faller makes no argument that a *Bivens* cause of action could run against state officials. So the Court dismisses these remaining claims against the Commonwealth of Kentucky and the Governor.

**C. Darlene Price's motion.** In a motion filed jointly in both of Faller's cases before this Court, a non-party named Darlene Price moved to "intervene as *amicus curiae.*" DN 19. The motion fails for the same reasons that the Court denied the identical motion filed in connection with Faller's petition for *coram nobis*. *See* DN 442, *United States v. Faller*, No. 1:13-cr-29. Because the request fails to identify any personal interest in Faller's conviction, the Court construes this as a motion to file an *amicus curiae* brief, not a motion to intervene. FED. R. CIV. P. 24(a)–(b) (intervention requires a right or interest in the case).

"The Federal Rules of Civil Procedure do not address motions for leave to appear as *amicus curiae* in a federal district court, and the decision to allow an appearance as *amicus curiae* falls under the district court's inherent authority." *E.g.*, *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, No. 1:15-cv-1191, 2017 WL 11454764, at *1 (W.D. Mich. Oct. 30, 2017) (cleaned up). When deciding whether to allow such participation in another's case, district courts consider the timeliness and usefulness of the brief. *Id.* Even assuming Price's brief is timely, however, it is not useful.

The bulk of the brief (and the accompanying motion, *see* DN 19-1) is another recitation of Faller's allegations of a nefarious intergovernmental conspiracy to destroy his life. Like numerous other filings by Faller, Price's brief points to no legal sources or factual support that would help the Court assess Faller's claims. *See* "Motion to Intervene" (DN 19-1) Ex. 1 at 8–11 (asserting concern for Faller's Equal Protection and Due Process rights). This duplication serves primarily to clog the Court's docket and slow the flow of judicial decisions for other litigants. So the Court also denies Price's motion to participate—as *amicus* or otherwise—in this case (DN 19).

**D. Motion to disqualify.** In line with the strident allegations of governmental corruption set forth in this case and the parallel criminal *coram nobis* proceedings, Faller has moved to disqualify the presiding district judge, the magistrate judge, and all other judges in the Sixth Circuit. Motion to Disqualify (DN 24). This motion is nearly identical to the motion Faller filed in connection with his

*coram nobis* petition. *Compare id.*, *with* DN 449, *United States v. Faller*, No. 1:13-cr-29. And it names the magistrate judge in that case rather than the magistrate judge assigned to this case. Motion to Disqualify at 1, 7.[10] Judge Brennenstuhl issued a report and a recommendation that the Court deny Faller's disqualification motion in his other case. *See* Report & Recommendation (DN 450), *United States v. Faller*, No. 1:13-cr-29. Faller filed a timely objection, DN 451, but identified no "part of the order that [wa]s clearly erroneous or [wa]s contrary to law." FED. R. CIV. P. 72(a).

Magistrate Judge Brennenstuhl properly cited the standards to disqualify a judge. He also explained in detail how Faller had not made the required showing and failed to demonstrate any bias. Report & Recommendation at 4–5. Instead, Faller's motion merely "recit[ed] the allegations he has advanced in support of his underlying" petition, which the Court denied. *Id.* at 2 (citing opinion denying petition for writ of *coram nobis*). The objection, rather than identifying and explaining any legal or factual error by the magistrate judge, repeats similar allegations about a mass governmental conspiracy against him—apparently extending to *all* judges in the Sixth Circuit.

Faller has filed nothing in this civil case that further elucidates his contention that all judges in the Sixth Circuit should be recused. And the Court thoroughly explained why recusal is unwarranted in Faller's practically identical parallel case. Those reasons apply with equal force here. Faller's only additional objection of note rests on his dissatisfaction with the pace of the Court's adjudication of his *coram nobis* petition. Motion to Disqualify at 3–6. That doesn't bear on the integrity of the deciding judge, however, and says nothing about the Court's handling of Faller's claims in this case. Because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," rulings against Faller don't warrant recusal. *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). "Although a judge is obliged to disqualify himself when there is a close question concerning his impartiality, he has an equally strong duty to sit where disqualification is not required." *United States v. Angelus*, 258 F. App'x 840, 842 (6th Cir. 2007) (cleaned up).

**F. Motion to stay the case.** Finally, Faller moved to stay this civil case on April 2, 2024, DN 27, based on purportedly new evidence he purportedly just

---

[10] Faller previously moved (unsuccessfully) to disqualify the magistrate judge in his criminal case. *See* DN 418, *United States v. Faller*, No. 1:13-cr-29. He and his allies have also has sought the direct supervision of a Justice of the Supreme Court in light of the alleged "corruption" in that case. *See id.* at *13 n.6 (discussing letter Faller's pleading attached sent from State Senator Adrienne Southworth to the U.S. Supreme Court requesting "direct supervision"). The Supreme Court doesn't appear to have acted on that request. An affidavit from the same source appears in this case but doesn't support disqualification. *See* DN 1-8.

11

discovered. The authority to stay a case is an aspect of a court's inherent control of its docket—recognizing competing interests of judicial economy, counsel, and parties. *See Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). "The most important consideration is the balance of hardships; the moving party has the burden of proving that it will suffer irreparable injury if the case moves forward, and that the non-moving party will not be injured by a stay." *Int'l Bhd. of Elec. Workers v. AT&T Network Sys.*, 879 F.2d 864, 1989 WL 78212, at *8 (6th Cir. July 17, 1989) (citing *Landis v. North American Co.*, 299 U.S. 248, 255 (1936)).

The motion to stay cites no law. Instead it emphasizes—without proof—Faller's oft-repeated allegations of grand conspiracy. Motion to Stay at 1–3. Although he has asserted these allegations for many years in various forums and formats, he now claims that a stay is necessary to produce newly discovered evidence of his claims. *Id.* at 3–4. What that evidence is or might be, however, remains unclear.

Nor is the Defendants' opposition to his stay request itself evidence of governmental conspiracy against him, as Faller implies. Stay Reply (DN 31) at 2. Faller, after all, filed this litigation against the governmental Defendants—who disagree that they bear any liability and accordingly have opposed his claims before the Court as well as any delay in their adjudication.

Faller has not asserted what new evidence he might have access to. He refers to "several terabytes of information" that purportedly will form the basis of litigation in Florida and potentially an attempt to amend or supplement his claim here. Motion to Stay at 3. Four months have passed, yet Faller has not filed an amended complaint or shed light on the nature and value of this new information. All he has done is assert that it may have some connection with the Defendants' "motive" to target him. Stay Reply at 4. Why this might be relevant at the motion-to-dismiss stage remains unclear. And he has provided no argument regarding irreparable injury to his position regarding the motions to dismiss.

Faller also based his motion to stay on the pendency of his petitions for writ of *coram nobis*, which might (somehow) affect the case. Stay Reply at 6. That petition, however, is no longer pending (except insofar as Faller has filed a motion for reconsideration and a motion to supplement, which on their face offer no compelling reason why the Court might grant). *See* DN 458, *United States v. Faller*, No. 1:13-cr-29 (motion for reconsideration). He is also apparently pursuing post-conviction relief related to a case in Florida. *See* Motion to Stay at 3–4. But Faller stated emphatically in his complaint that his claims are based only on his indictment in Kentucky, Complaint at 10, so that conviction should not form a basis to stay this case. Faller asserted that "unless the Constitution is completely gone, the convictions in SDFL and WDKY will have to be vacated which will greatly reduce the necessary litigation

in these matters." Motion to Stay at 4. But the Constitution has not gone into exile, and no basis exists to stay this case.

### ORDER

The Court grants the Defendants' motions to dismiss with prejudice (DNs 11 & 16) and denies the motions to strike (DN 15), to file an *amicus curiae* brief (DN 19), to disqualify all Sixth Circuit judges (DN 24), and to stay the case (DN 27). In a separate order the Court will issue a final judgment dismissing this case with prejudice.